**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DEAN ROBERTS,**

    **Plaintiff,**

**v.**                                                                **Case No. 8:06-cv-2391-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                         /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income Payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty seven years of age at the time of his most recent administrative hearing in May 2006. He stands 5', 8" tall and weighed 200 pounds. Plaintiff has a sixth grade education. His past relevant work was as a truck driver and well driller. Plaintiff applied for Supplemental Security Income ("SSI") payments on January 31, 2003 (protective filing date), alleging disability as of February 18, 2001, by reason of diabetes, hepatitis C,

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

anxiety, depression, arthritis, and high blood pressure.[2] The Plaintiff's application was denied originally and on reconsideration. The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ") on June 3, 2005.[3] (R. 366-85). By a decision of July 14, 2005, the ALJ denied Plaintiff's claim. (R. 41C-41X). Plaintiff sought review of the ALJ's decision. On October 28, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for further consideration.[4] (R. 61-62).

The hearing on remand was conducted on May 4, 2006. The Plaintiff was again represented by counsel and testified in his own behalf. Additionally, a vocational expert and medical (psychological) expert were called by the ALJ.

---

[2] It appears that Plaintiff previously filed an application for benefits on July 26, 2001. (R. 41D). That application was denied initially on November 28, 2001. *See id.* In the first decision on the instant application, the ALJ determined that there was no good cause or any other basis to reopen that determination. *Id.* Accordingly, the ALJ found that disability could not be found on the instant application prior to November 28, 2001. *Id.* The ALJ's decision to not reopen Plaintiff's prior application is not at issue on this appeal.

[3] The Plaintiff was represented by counsel and testified in his own behalf. Plaintiff testified that he left his last job because of his diverticulitis and subsequent removal of part of his colon. Plaintiff indicated that the diverticulitis-related pain resolved but he still has bowel problems that require him to use the bathroom frequently. He later was diagnosed with hepatitis C, which causes some fatigue. Plaintiff also complained of high blood pressure, which causes daily headaches and dizziness; diabetes; difficulty with his hands; weak legs and hips; ringing in the ears; difficulty focusing his right eye and headaches related to Bell's palsy; difficulty urinating and kidney stones; depression; and anxiety attacks. (R. 366-85).

[4] The Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's mental impairments, obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairment (if necessary), further evaluate Plaintiff's mental impairments in accordance with the technique described in the regulations, give further consideration to Plaintiff's maximum residual functional capacity, and obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the Plaintiff's occupational base. (R. 61-62).

The ALJ first took testimony from David Kazar, a medical expert ("ME"). The ME testified primarily as to Plaintiff's mental impairments although he had reviewed the entirety of the record. According to the ME, Plaintiff had likely been diagnosed as suffering from a major depressive disorder, recurrent, moderate. Based on the records, the ME described Plaintiff's mental limitations as being mild in activities of daily living, moderate in social functioning, and mild in concentration, persistence, and pace. The record revealed no documented episodes of deterioration or decompensation. Upon questioning by Plaintiff's counsel and review of a list of Plaintiff's current medications, the ME testified that the combination of drugs prescribed would almost certainly have an effect on Plaintiff's mental functioning. However, upon questioning by the ALJ, the ME indicated that the record did not identify any side effects from any of the medications prescribed to Plaintiff. *See* ME's testimony (R. 389-93).

Plaintiff testified next. According to Plaintiff, he last worked as a well driller in 2000. Prior to that, Plaintiff worked as a truck driver for about fifteen years. He quit his last job after about six months because of diverticulitis. Since then, diarrhea has been a constant problem; he must use the bathroom four to five times every morning but then is usually okay by the afternoon. Plaintiff has also been diagnosed with hepatitis C. He was treated with Interferon and Reviveron, which helped. He indicated, however, that he could not function during the year-long treatment and spent most of his time on the couch. By his account, he did not return to work after the treatment because he never recuperated completely from the side effects and he suffered depression and anxiety as well. Plaintiff testified that he also suffers from diabetes, high cholesterol, and high blood pressure. Plaintiff attributes his

dizziness and lightheadedness to his medication for high blood pressure. His diabetes has resulted in an inability to feel the pulse in his feet and lower legs and he has to use a cane. His legs feel numb and sore and affect his ability to walk and stand. Physical therapy did not help.    Plaintiff also has ear problems; he had an ear infection and had to undergo emergency surgery to put a tube in his ear. The doctor that did the surgery told Plaintiff that his headaches result from TMJ. Plaintiff also suffers from Bell's palsy. The neurologist who treats Plaintiff told him that the headaches result from that condition. The Bell's palsy also causes his right eye to take off to the side at times and his mouth does not always open and close all the way. Plaintiff also indicated that the doctor was of the opinion that he would suffer headaches and ringing in the ears for the rest of his life. By Plaintiff's account, he has experienced the ringing in his ears and headaches consistently since August 2004. The ringing in his ears is not painful, but it is annoying and interferes with his ability to concentrate. As for the headaches, Plaintiff indicated that he takes medication for the headaches but it does not alleviate the headaches completely. On a scale from one to ten, Plaintiff testified that his headaches rate about a seven or an eight. They also affect his concentration and are distracting. When he gets a headache, he just sits through it.

      Plaintiff also has a history of carpal tunnel syndrome in both hands. He has had a release on both hands. The surgery helped his right hand but did little for his left and he has diminished strength. Plaintiff takes Naproxen for arthritis pain in his hands. He takes Xanax, but no longer takes other medication for his depression and anxiety. By his account, the other medication he used to take for such made him feel worse. He continues to see a psychologist and is still affected by depression. Plaintiff also has anxiety attacks and cannot be in a

crowded room. These impairments affect his ability to accomplish things because they take away his drive. He also has a swollen prostrate and has had three kidney stones removed. His urinary function is "not well."

Plaintiff is divorced and lives with his girlfriend. He does not clean or do chores around the house because his girlfriend does those things. Plaintiff indicated that he probably could vacuum for about fifteen minutes if he had to, then he would be tired and would have to sit down. Plaintiff washes his own plates in the morning but could not wash a sink full of dishes. Plaintiff does not cook because his back bothers him. He does microwave food. He also does a little yard work; it takes him two days to mow his yard. When he does it, he suffers shortness of breath, his back bothers him, and his legs get weak. Plaintiff does not go shopping because he does not like to. He does not like to go anywhere because of his anxiety of being around people.

On a typical day, Plaintiff spends most of the day sitting down in a recliner with his feet up. He can walk about fifty feet without a cane if his back is not bothering him too much. He does not use a cane in the house but does use it if he goes to the store. Plaintiff does not nap during the day and he does not sleep well at night. Anxiety and the ringing in his ears makes it difficult for him to fall asleep. Upon questioning, Plaintiff testified that he could not remember the last time he was out of the house for eight hours. He does not think he could do so now on account of his anxiety, frustration, aggravation, and short temper. Plaintiff has good and bad days. On the worst of days, he stays in bed. This happens a couple of times a week. *See* (R. 393-410).

Joyce Courtright, a vocational expert ("VE"), testified last. She first testified upon an assumption of an individual of Plaintiff's age and education, capable of light exertional work with a frequent limitation in gross manipulation bilaterally. On this hypothetical, the VE opined Plaintiff could not perform his past relevant work but could perform work existing in substantial numbers in the national economy such as rapid pack, final inspector, and merchandise marking. Assuming the same limitations in the first hypothetical along with mild restriction in daily activities, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace, the VE's conclusion would not be altered. Assuming all of the limitations identified above but adding moderate difficulties in social functioning, the VE again opined that her conclusion would not differ. Assuming that Plaintiff's testimony was credited in full, the VE opined that no work would be available. Upon questioning by Plaintiff's counsel, the VE indicated that if the individual missed more than ten to twelve days of work a year, it would be very difficult to maintain the jobs identified. She also indicated that a few of the jobs could be performed with the legs elevated but not directly horizontal. Occasional employers would allow for multiple bathroom breaks but that was the exception not the norm. *See* VE's testimony (R. 410-15).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of July 26, 2006, the ALJ determined that Plaintiff has severe impairments related to hepatitis C, hypertension, non-insulin dependent diabetes mellitus, chronic obstructive pulmonary disease, obesity, arthritis, history of diverticulitis, recurrent kidney stones and urinary tract infections, history of Bell's palsy on the right side of face,

history of carpal tunnel syndrome, chronic otitis with normal hearing, depression, and anxiety. Notwithstanding these impairments, the ALJ found that Plaintiff had the residual functional capacity to perform light exertional work with a mild depression-related limitation in activities of daily living, a moderate limitation in social function, a mild limitation in activities requiring concentration, persistence or pace, and no evidence of prolonged episodes of decompensation. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national and local economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-17). After considering additional medical records and a brief submitted by Plaintiff's attorney, the Appeals Council denied Plaintiff's request for review (R. 2A), and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See*

*id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Administrative Law Judge erred in his evaluation of the Plaintiff's subjective complaints of persistent headaches and dizziness; and

(2) The Administrative Law Judge erred in reaching a conclusion that the Plaintiff was not disabled by relying on answers to an incomplete hypothetical situation opposed to a vocational expert.

By his first claim, Plaintiff challenges the ALJ's evaluation of his subjective complaints of headaches, dizziness, and ringing in the ears. To this end, he notes that the ALJ did not reject his complaints of headaches, dizziness, and ringing in his ears; rather he rejected their etiology. Thus, Plaintiff argues that to the extent that the ALJ *implicitly* found that Plaintiff's complaints related to such were not credible, the ALJ failed to provide adequate reasons for rejecting these complaints. As a result, Plaintiff urges that his claim be reversed and remanded with instructions for the ALJ to accept his allegations as true and proceed with the remainder of the sequential evaluation. (Doc. 22 at 5-8).

The Commissioner counters that the ALJ properly evaluated Plaintiff's subjective complaints in accordance with the regulations and substantial evidence supports the ALJ's finding that Plaintiff's allegations were not fully credible. In support thereof, the Commissioner notes that the ALJ specifically discussed the medical evidence pertaining to Plaintiff's complaints of headaches and dizziness and found that Plaintiff's allegations regarding the nature of his headaches were inconsistent and that Plaintiff's "dizzy spells"

mainly involved mild vertigo. In any event, the Commissioner points out that the ALJ specifically found that Plaintiff had mild limitations in activities requiring concentration and Plaintiff has failed to demonstrate that his headaches and dizziness or any other symptom or condition imposed additional limitations on his ability to work. (Doc. 23 at 4-7).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt*, 921 F.2d at 1223 (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210; *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court

will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale*, 831 F.2d at 1012.

Here, Plaintiff testified that he has had ringing in the ears and headaches constantly since August 2004.  (R. 399-400).  According to Plaintiff, the ringing in his ears is irritating and affects his ability to concentrate, but it is not painful.  (R. 400).  His headaches are painful (level 7 or 8) and distracting and affect his concentration.  (R. 400-01).  No medication completely alleviates the headaches.  (R. 401).  Plaintiff attributed his headaches and dizziness to high blood pressure, the side effects of medication, TMJ, and/or Bell's palsy.  (R. 398-99, 401, 403).  The ALJ considered this testimony.  (R. 12).  He also fairly reviewed the medical record documenting Plaintiff's complaints of such.  (R. 13).  In assessing the credibility of Plaintiff's allegations, the ALJ stated in part:

> With respect to his headaches the claimant's statement at the hearing that these have been caused by prescription medications is not supported by the treatment records or by his own subsequent testimony that the headaches have resulted from Bell's palsy.  Indeed the effect of this impairment, as documented by the evidence, has been limited to some facial drooping affecting the eye-lid.  The alleged dizzy spells, meanwhile, have involved mostly mild vertigo. . . .  Despite a diagnosis of chronic otitis media and allegations of ear-ringing there are no objective findings of hearing loss.

(R. 14).  As indicated above, Plaintiff argues that the ALJ did not reject his complaints of headaches, ringing in the ears, or dizziness; rather, he rejected the etiology of such.  He also argues that, to the extent that the ALJ implicitly rejected his complaints, the ALJ failed to give adequate reasons for doing so.

11

Upon careful consideration, I am obliged to conclude that the ALJ did not err in this regard. To the extent Plaintiff contends otherwise, I initially find that the decision reflects the ALJ applied the proper standard in assessing Plaintiff's subjective complaints. Although the ALJ did not expressly refer to the "pain standard," his reference to the regulatory provision and ruling (R. 14) reveals his understanding of the applicable standard, and a fair reading of the decision reflects his application of the standard. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Thus, the ALJ found that Plaintiff was not symptom free and that he had medically determinable impairments, namely, hepatitis C, hypertension, non-insulin dependent diabetes mellitus, chronic obstructive pulmonary disease, obesity, arthritis, history of diverticulitis, recurrent kidney stones and urinary tract infections, history of Bell's palsy on the right side of face, history of carpal tunnel syndrome, chronic otitis with normal hearing, depression, and anxiety, that could reasonably give rise to the type of pain and limitations alleged, just not to the extent that the limitations resulting therefrom were disabling.

Further, the ALJ discounted Plaintiff's subjective complaints of *disabling pain* and limitations on a finding that such were not "fully supported by the evidence." This comment must be read in the context of the ALJ's review of such record. (R. 12-13). While I do not disagree outright with the Plaintiff that the ALJ appears to have rejected the *etiology* of his complaints of headaches, ringing in the ears, and dizziness, *see* (R. 14), Plaintiff ignores that the ALJ was not presented with measurable restrictions regarding such complaints. Aside from complaining generally that his concentration was affected by headaches and ringing in

the ears, Plaintiff did not quantify such. Importantly, nor did his attorney.[5] As such, I must conclude that the ALJ did not err by failing to provide explicit and adequate reasons for discounting Plaintiff's rather vague allegations of concentration limitations. Given the immeasurable restrictions alleged in the ability to concentrate, a remand for this alleged error alone would serve no useful purpose. In any event, as the Commissioner points out, the ALJ did find that Plaintiff had a mild concentration difficulty. Although this was related to Plaintiff's mental impairments, Plaintiff fails to demonstrate that his headaches, dizziness, and ringing in the ears resulted in a concentration limitation greater than that.[6]

By his second claim, Plaintiff argues that the ALJ posed an incomplete hypothetical question to the VE and erroneously relied upon his answer to the same. By this argument, the ALJ erred by not including in the hypothetical question concentration-related restrictions resulting from Plaintiff's headache pain, ringing in the ears, and dizziness. (Doc. 22 at 8).

The Commissioner responds that the ALJ was not obliged to incorporate such limitations in the hypothetical question posed to the VE because the ALJ correctly determined that Plaintiff's subjective complaints were less than credible. Additionally, the Commissioner points out that the ALJ did ask the VE to consider limitations in Plaintiff's ability to perform activities requiring concentration and the VE responded by identifying several jobs which Plaintiff's could perform. (Doc. 23 at 7).

---

[5]Counsel on the instant appeal also represented Plaintiff at the administrative hearing.

[6]To this end, it is worth noting that, even if the court finds that the evidence preponderates against the ALJ's decision, it may not reweigh the evidence or substitute its own judgment for that of the ALJ. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth*, 703 F.2d at 1239.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

For the same reasons found above, I likewise conclude that the ALJ did not err by failing to include in the hypothetical question Plaintiff's generalized allegations about his concentration being impacted by his headaches, dizziness, and ringing in the ears. While an ALJ is obliged to fully incorporate all limitations in his hypothetical questions, he is not obligated to include unsupported subjective restrictions and/or complaints in a hypothetical. *See Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007) (providing that hypothetical questions need only to include impairments that are supported by the record and that the ALJ accepts as valid); *Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (noting that ALJ did not err in omitting additional restrictions not supported by the evidence); *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (providing that an ALJ is not required to include in a hypothetical question those limitations he concludes are not credible). Again, it is worth noting that Plaintiff did not demonstrate before the ALJ, nor does he demonstrate on this appeal, that his concentration was impaired to a degree beyond that determined by the ALJ.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 13th day of March 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record